# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**KIM M. ALDRIDGE**  **PLAINTIFF**

**V.**  **CIVIL ACTION NO.: 3:16-CV-207-RP**

**NANCY A. BERRYHILL,**
**COMMISSIONER OF SOCIAL SECURITY**  **DEFENDANT**

## **MEMORANDUM OPINION**

Plaintiff Kim M. Aldridge has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying her applications for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) under Title XVI of the Social Security Act. Docket 1. Plaintiff filed applications for disability insurance benefits and supplemental security income on July 8, 2013. Docket 7 at 172-74; 180-84. In both applications, Plaintiff alleges disability beginning on July 1, 2012.[1] *Id*.

The agency administratively denied both of Plaintiff's claims initially on August 12, 2013 (*Id*. at 58-64; 65-71) and on reconsideration on September 30, 2013. *Id*. at 76-82; 83-89. Plaintiff then requested an administrative hearing, which Administrative Law Judge (ALJ) Robert Hodum held on April 7, 2015. *Id*. at 110-11, 143-47. The ALJ issued an unfavorable decision on April 29, 2015. *Id*. at 11-18. The Appeals Council denied her request for review on August 8, 2016. *Id.* at 1-4. Plaintiff timely filed this appeal from the August 8, 2016, decision, the undersigned held a hearing on April 26, 2016, and it is now ripe for review.

---

[1] At the ALJ hearing on April 7, 2015, Plaintiff moved to amend the alleged onset date to June 23, 2013, and the ALJ granted the motion. Docket 7, p. 29.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment. Docket 10.

## I. FACTS

Plaintiff was born June 26, 1979, and was 35 years old at the time of the ALJ hearing. Docket 7 at 33. She is considered to be a younger individual for the purpose of determining disability benefits. *Id*. at 17. Plaintiff has a twelfth grade education and past relevant work as a warehouse worker and hand packager. *Id*. at 36, 47. Plaintiff contends she became disabled as a result of lupus, her inability to stand for long periods of time, swelling in her legs, and back cramps. *Id*. at 227. At the ALJ hearing, counsel for Plaintiff stated that she has lupus, hypertension, lumbar degenerative disease, facet arthropathy, and chronic fatigue. *Id*. at 30. Plaintiff testified that her lupus causes flare ups lasting two to three days approximately twice a month. *Id*. at 37. During a flare up, Plaintiff has difficulty using her hands, specifically gripping or grasping objects, buttoning, zipping, typing or writing. *Id*. at 40. She also has difficulty bending, stopping or squatting and experiences severe headaches which may last between five and six hours or up to three days. *Id*. at 41, 44.

The ALJ established that Plaintiff had not engaged in substantial gainful activity since June 23, 2013, the amended alleged onset date. *Id*. at 13. Next, the ALJ found that Plaintiff experienced the severe impairment of systemic lupus erythematosus but that Plaintiff's impairment did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). *Id*. at 13-14.

Considering Plaintiff's severe impairment, the ALJ found that Plaintiff's demonstrated abilities were consistent with a Residual Functional Capacity (RFC) to perform a full range of light work. *Id*. at 14-17. In making this determination, the ALJ relied heavily on the opinions of the state agency evaluating and consulting physicians—Dr. Madena Gibson and Dr. Karen Hulett—who concluded that Plaintiff had exertional limitations but could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; and sit, stand, and/or walk about six hours in an eight-hour workday. *Id*. at 61-62, 68-69.

Based on his review of the medical evidence in conjunction with Plaintiff's own statements about her symptoms and their effects, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" because they are "inconsistent with the treatment notes, which do not document flareups to the frequency and severity alleged." *Id*. at 15-16. The ALJ also noted that Plaintiff's statements regarding medication side effects are contradicted by treatment notes indicating that she tolerated her medicines well. *Id*. at 16. The ALJ discussed specific inconsistencies between treating physician Dr. Amy Woods' opinions and the other record evidence and afforded Dr. Wood's opinions little weight. *Id*. at 16-17. Finding the opinions of the state agency evaluating physician and state agency consulting physician consistent with the record as a whole, the ALJ afforded these opinions great weight in formulating Plaintiff's RFC. *Id*. at 17.

The ALJ determined that Plaintiff's RFC precludes her ability to perform past relevant work; however, based on her residual functional capacity for the full range of light work, "there are jobs that exist in the significant numbers in the national economy that [Plaintiff] can perform." *Id*. at 17-18. The ALJ ultimately ruled that Plaintiff had not been under a disability, as

defined in the Social Security Act, from June 23, 2013, through April 29, 2015, the date of the ALJ's decision. *Id*.

Plaintiff asserts that the ALJ erred by giving the opinion of a non-examining physician greater weight than the examining physician's opinion and by failing to properly assess the treating physician's opinion. Docket 11 at 3. Plaintiff further argues that the ALJ failed to evaluate all of the record evidence and erred in not considering Plaintiff's arthritis to be a severe impairment. *Id*.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[2] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[3] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[4] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[5] At step three the ALJ must conclude that plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[6] If the plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[7] At step five, the burden

---

[2] *See* 20 C.F.R. §§ 404.1520 (2012).
[3] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).
[4] 20 C.F.R. §§ 404.1520(b) (2012).
[5] 20 C.F.R. §§ 404.1520(c) (2012).
[6] 20 C.F.R. §§ 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2011).
[7] 20 C.F.R. §§ 404.1520(e) (2012).

shifts to the Commissioner to prove, considering the plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[8] If the Commissioner proves other work exists which the plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[9]

### III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision to deny benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). A court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[10] even if it finds that the evidence leans against the Commissioner's decision.[11]

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole,

---

[8] 20 C.F.R §§ 404.1520(g)(2010).
[9] *Muse*, 925 F.2d at 789.
[10] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).
[11] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson,* 402 U.S. at 390.

## IV.  DISCUSSION

Plaintiff's argument regarding the ALJ's treatment of treating physician Dr. Amy Woods' opinion is twofold: first, Plaintiff asserts that the ALJ erred by giving more weight to the opinions of State agency evaluating and consulting physicians; and second, Plaintiff argues that the ALJ failed to properly assess Dr. Woods' opinion. Docket 11 at 5-8.

On January 26, 2015, Dr. Woods completed a medical source statement for Plaintiff. Docket 7 at 545-47. Dr. Woods opined that Plaintiff could sit, stand, and walk for less than two hours in a normal workday; occasionally lift and carry less than ten pounds and rarely lift and carry more than ten pounds; rarely twist, stoop, crouch, climb ladders or stairs; and that she experienced significant limitations in doing repetitive reaching, handling, or fingering. *Id*. at 545-46. The ALJ afforded little weight to treating physician Dr. Amy Woods' opinion finding that it was not supported by relevant evidence and was inconsistent with the record as a whole. *Id*. at 16. Instead the ALJ "relied heavily on the opinions of State Agency physicians" Dr. Gibson and Dr. Hulett in formulating Plaintiff's RFC, finding their opinions "consistent with the record as a whole." Docket 7 at 14.

Plaintiff argues that the State Agency evaluating physicians, Dr. Gibson and Dr. Hulett, never examined Plaintiff nor did they have access to all of the pertinent medical evidence at the time they rendered their opinions. Docket 11 at 6. Specifically, Dr. Woods' January 26, 2015 medical source statement was not considered by either State Agency physician in rendering their

opinions as it predates both. *Id*. at 7. Plaintiff states that Dr. Woods treated Plaintiff approximately seventeen times and argues that her opinion is substantiated by the objective medical results of Plaintiff's MRI and EMG, which she ordered to be completed. Plaintiff avers that the ALJ's failure to consider the first two *Newton* factors before discounting Dr. Woods' opinion "significantly prejudiced the Plaintiff." *Id*. at 10-11.

The law regarding treatment of an opinion from a treating source or treating physician is clear. Absent reliable medical evidence from a *treating or examining* specialist, an ALJ may reject the opinion of a treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(c)(2) (emphasis added); *see also*, *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). The ALJ is required to perform a detailed analysis of the treating physician's opinion using these "*Newton* factors" only if there is no reliable medical evidence from another *treating or examining* physician that controverts the treating physician's opinion. *See Newton*, 209 F.3d at 445-47 (emphasis added); *Rollins v. Astrue*, 464 F. App'x 353, 358 (5th Cir. 2012). Additionally, good cause may exist to allow an ALJ to give lesser weight to evidence from a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence. *Newton*, 209 F.3d at 456.

While it is true that a treating physician's opinion should be afforded considerable weight, "the ALJ has sole responsibility for determining a claimant's disability status […and] is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at 455. The Court agrees with the Commissioner that substantial evidence supports the ALJ's decision to afford Dr. Woods' opinion "little weight" due to (1) a lack of

medical evidence demonstrating Plaintiff's alleged limitations and (2) the presence of medical evidence from the record contradicting Dr. Woods' opinion. Docket 12 at 5.

Dr. Woods opined that Plaintiff could sit and stand/walk for less than two hours in a normal workday and that her impairments would cause her to miss work four or more days per month. Docket 7 at 546-47. Despite Plaintiff's frequent subjective complaints of pain, Dr. Woods' treatment notes from April 2013 through November 2014 consistently state that Plaintiff was "in no acute distress" (*Id*. at 282, 284, 286, 288, 292, 323, 340, 345, 365, 371, 388), and frequently describe Plaintiff's lumbar range of motion as normal (*Id*. at 286, 288, 292, 323, 346, 372, 389). On May 19, 2014, Plaintiff reported that she was not working any longer and could not stand all day due to joint pain and leg swelling, however, Dr. Woods' physical examination only describes Plaintiff's gait as "slow to rise and get started." *Id*. at 366. At Plaintiff's next visit on August 4, 2014, the musculoskeletal examination states "free ROM, no tenderness or edema." *Id* at 372. Again on November 4, 2014, despite Plaintiff's complaints of lower back pain, Dr. Woods' noted "no symptoms of joint pains, joint stiffness" and on physical examination recorded "free ROM, no tenderness or edema" and, despite some tenderness, normal range of motion and stability in the lumbar spine. *Id*. at 388-89.

In addition to the lack of support for Dr. Woods' opinion in her own records, medical records from Dr. Eddleman, Plaintiff's rheumatologist, fail to support and at times contradict Dr. Woods' opinion. The record contains thirteen treatment records from Dr. Eddleman from August 2011 through December 2014. The ALJ found that, according to Dr. Eddleman, Plaintiff's "symptoms are well controlled on medication." *Id*. at 16. Specifically, the ALJ notes occasions on which Plaintiff reported to Dr. Eddleman that she was doing well and had good control of her joint pain and swelling as well as her symptoms generally. *Id*.

Consistently throughout Dr. Eddleman's records, despite subjective complaints of "dull" or "mild" pain, Plaintiff's joint pain is described as "well controlled" (*Id*. at 375, 482, 485, 488, 490, 501, 504, 507, 510, 518, 520) and she displays a normal range of motion without weakness (*Id*. at 485, 488, 491, 495, 498, 501, 505, 508, 511, 513). Similarly, Plaintiff's physical therapy records from Baptist Rehabilitation from May 10, 2013 through May 26, 2013, demonstrate improvement over the course of treatment. *Id*. at 270-80. Plaintiff repeatedly reported decreased pain, and the records indicate that she tolerated treatment well. *Id*. at 273, 274, 275, 276, 278.

The record contains reliable medical evidence, including records from treating physician Dr. Eddleman, that controverts Dr. Woods' opinion that Plaintiff "constantly" experiences "pain or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks during a normal 8 hour workday." *Id*. at 545. The record as a whole does not support Dr. Woods' opinion that Plaintiff could only sit, stand, and walk for less than two hours during a normal workday or that Plaintiff experiences "significant limitations" in repetitively reaching, handling, or fingering. *Id*. at 547. The lack of evidentiary support in the record for Dr. Woods' opinions establishes good cause allowing the ALJ to give lesser weight to Dr. Woods' opinion. *See Newton*, 209 F.3d at 456. Furthermore, the Court finds that the ALJ's decision to rely heavily on the opinions of the state agency physicians is supported by substantial evidence as Dr. Eddleman's and Dr. Woods' treatment records, as discussed herein, support their RFC findings and ultimate disability determination. Docket 7 at 58-64; 76-82.

Plaintiff argues that the ALJ failed to fully and fairly evaluate all record evidence by failing to mention or mischaracterizing Dr. Woods' January 26, 2015 letter and Plaintiff's May 20, 2013 EMG and MRI reports. Docket 11 at 8-9. It is well established in the Fifth Circuit that an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence

that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000), citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984). However, a "pick and choose" error does not occur where the ALJ considers all of the evidence but decides to afford less weight to a physician's opinion. *See Stephens v. Barnhart*, 174 F. App'x 232, 233 (5th Cir. 2006).

Plaintiff argues that she was prejudiced by the ALJ's selective reading of the MRI report and his failure to mention the "severe" findings including "severe disc degenerative change with marked endplate signal intensity change." Docket 11 at 9; Docket 7 at 301-02. The EMG report which Plaintiff claims the ALJ failed to consider similarly found "mild abnormal irritability in the L-4-/5 paraspinal muscles." Docket 7 at 303-04. The January 26, 2015 letter describes in narrative form the limitations outlined in Dr. Woods' checklist opinion, which the ALJ discussed at great length. *Id*. at 50.

There is no indication that the ALJ failed to consider this evidence. The ALJ discussed the MRI findings and noted the "degenerative change" as well as the "mild dorsal disc bulging" and "minimal canal compromise." Docket 7 at 13. The ALJ found that despite these findings, at a doctor's visit one month after the MRI, Plaintiff had "no tenderness to palpation in the lumbar spine and full range of motion" and concluded that Plaintiff's "physical examinations have been largely unremarkable, with many notations of normal range of motion and no tenderness in the lumbar spine." *Id*. at 13-14. As discussed herein, the ALJ's determination that Dr. Woods' assessments should not be given controlling weight was based on a consideration of all the evidence.

Finally, Plaintiff argues that the ALJ erred in failing to conclude that Plaintiff's arthritis is a severe impairment. Docket 11 at 12. Plaintiff asserts that "the ALJ failed to consider the

totality of the findings in the MRI" which, in conjunction with Plaintiff's testimony and treatment records "demonstrates that [her arthritis] caused significant restrictions." *Id*.

The Court agrees with the Commissioner that "there is no evidence that Plaintiff's arthritis imposes any functional limitations on Plaintiff's ability to perform basic work functions." Docket 12 at 10. "The mere presence of some impairment is not disabling per se. Plaintiff must show that she was so functionally impaired […] that she was precluded from engaging in any substantial gainful activity." *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Despite Plaintiff's assertions, the record demonstrates an absence of objective medical evidence indicating that Plaintiff suffered disabling effects from her arthritis. The ALJ properly considered Plaintiff's arthritis in her disability determination and concluded that her "spine disorder and dysfunction of joints…do not cause more than a minimal impact on [her] ability to perform basic work activities and are therefore nonsevere." Docket 7 at 13-14. Therefore, as detailed herein, substantial evidence supports the ALJ's determination that Plaintiff's arthritis was not severe.

## V. CONCLUSION

After diligent review, the Court concludes that the ALJ properly discounted Dr. Woods' opinion as it was not supported by substantial evidence. The record contained sufficient medical evidence from Dr. Eddleman, as well as from Dr. Woods' records, to enable the ALJ to properly formulate Plaintiff's RFC. The Court finds that the ALJ properly considered all of the record evidence in determining Plaintiff's impairments and making an ultimate disability finding. Because the ALJ's decision was supported by substantial evidence, the Court affirms the decision of the Commissioner.

A final judgment in accordance with this memorandum opinion will issue this day.

**SO ORDERED,** this the 26th day of May, 2017.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE